IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| HILLERICH & BRADSBY CO., | CV 11–75–H–DWM |
| Plaintiff, | |
| vs. | OPINION<br>&<br>ORDER **FILED** |
| ACE AMERICAN INSURANCE CO., | |
| Defendant. | MAR 2 6 2013 |
| | Clerk, U.S District Court<br>District Of Montana<br>Missoula |

This is an insurance coverage case. It stems from the *Patch* lawsuit in state

court that involved the death of a young man who was struck by a baseball that

had been batted from a metal bat manufactured by Hillerich & Bradsby Company.

("H&B"). ACE American Insurance Company insured H&B. In this lawsuit, H&B

claims that ACE wrongly refused to pay further post-judgment interest and

attorney's fees after ACE recommended that H&B and ACE pay the $850,000 jury

verdict in the underlying state case.

Summary judgment in favor of ACE American Insurance Company was

granted on March 7, 2013. That order explained a detailed opinion supporting that

decision would be issued at a later date. This opinion and order follows that

1

determination and explains my reasoning.

## BACKGROUND

Brandon Patch died in a July 2003 baseball game after being hit by a baseball that was batted by a metal bat manufactured by H&B. H&B notified ACE of a potential lawsuit. The Patches sued H&B in Montana state court.

H&B's policy with ACE indemnified H&B for $2,000,000. But H&B had a $250,000 self insured retention for indemnity, which, much like a deductible, meant that H&B had to pay the first $250,000 to satisfy any judgment or settlement. The policy also provided H&B with $1,000,000 of coverage, per occurrence, for Allocated Loss Adjustment Expenses—e.g., attorney's fees, costs, and post-judgment interest. H&B had a self insured retention for this coverage in the amount of $350,000. These coverages were governed by an endorsement to the main policy—i.e. "Self Insured Retention with ALAE Limits Endorsements."

The Montana state court jury returned a verdict of $850,000, in favor of the Patches. H&B wanted to appeal the verdict, but ACE wanted to put the case to rest. It recommended that together H&B and ACE pay the $850,000 verdict, with H&B paying $250,000 (the amount of the self insured retention for indemnity) and ACE paying $600,000. H&B didn't heed this settlement recommendation. ACE then took the position that, under the Endorsement, it could stop paying post-

judgment interest and attorney's fees (i.e. Allocated Loss Adjustment Expenses) because it had recommended a settlement that was acceptable to the Patches.

H&B pursued its appeal and lost. *Patch v. Hillerich & Bradsby Co.*, 257 P.3d 383 (Mont. 2011). ACE then paid $600,000 to H&B, which ACE considered its share of the judgment. ACE also paid what it believed was its share of the Allocated Loss Adjustment Expenses owed up to the point that it recommended a settlement. H&B then filed this lawsuit.

## SUMMARY CONCLUSION

ACE is entitled to summary judgment because (1) ACE satisfied the requirements of Section IV.II.h of the Endorsement by recommending a settlement to H&B that would have been acceptable to the Patches and (2) ACE satisfied the post-judgment interest provision in Section I of the Endorsement because it offered to pay the part of the judgment that was within the policy limits. Having met these requirements, ACE was relieved of paying further Allocated Loss Adjustment Expenses, including post-judgment interest and attorney's fees.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment

3

always bears the initial responsibility of informing the district court of the basis

for its motion, and identifying those portions of 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any,' which it believes demonstrate the absence of a genuine issue of material

fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those

which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is

sufficient evidence for a reasonable fact-finder to return a verdict for the

nonmoving party. *Id.*; *see also Russell v. Daiichi–Sankyo, Inc.*, 2012 WL 1793226

(D. Mont. May 15, 2012).

ANALYSIS

**I.     Paragraph h of the Endorsement.**

ACE argues that, under the second half of Section IV.II.2.h ("Paragraph h")

of the Endorsement, it had no obligation to pay Allocated Loss Adjustment

Expenses after November 17, 2009, when ACE purportedly recommended to H&B

that H&B and ACE pay the full jury award of $850,000 to the Patches. H&B

makes several counter-arguments supporting its view that Paragraph h didn't apply

here and that the clause didn't allow ACE to stop paying Allocated Loss

Adjustment Expenses. ACE has the better argument on this point.

4

Paragraph h reads:

When the insured's liability is reasonably expected to exceed the "Self Insured Retention" stated in the Declarations, we may request the insured to tender the remaining limits of the "Self Insured Retention" in order to complete the settlement of any such claim or "suit". The insured will not unreasonably withhold its consent to our request to tender remaining limits of the "Self Insured Retention". Upon notification of the action taken, the insured shall promptly reimburse us for such part of the "Self Insured Retention" that has been paid by us. If we recommend a settlement which is acceptable to a claimant, which exceeds the "Self Insured Retention," and is within the Limit of Liability, and the insured refuses to consent to such settlement offer, then our liability shall not exceed the amount for which the claim could have been settled if our recommendation had been accepted, exclusive of the "Self Insured Retention" to effect settlement of any claim or "suit" nor shall we have any obligation to pay any "ALAE" incurred in excess of the "ALAE Self Insured Retention" after the time we requested you tender the remaining limits.

Paragraph h, by its plain language, applies to only "settlements." In this case, ACE recommended to H&B that together they pay the Patches the full amount of the jury's award—specifically, that H&B pay the $250,000 of its self insured retention for indemnity and ACE paying the remaining $600,000. The question this scenario leaves hanging is whether that recommendation was a recommendation to make a "settlement."

The Montana Supreme Court recently reiterated—"Settlement agreements are contracts, subject to the provisions of contract law." *Kluver v. PPL Mont. LLC*, ___ P.3d ___, 2012 WL 6740152 at *7 (Mont. 2012). This Court has addressed

5

the definition of "settlement" in some detail. *See Carlson v. St. Farm Mut. Auto. Ins. Co.*, 76 F. Supp. 2d 1069 (D. Mont. 1999). In *Carlson*, the Court explained in depth the "contract theory" of settlement. A settlement is a "binding contractual agreement . . . through which the parties arrange for final disposition of the case." *Id.* at 1078–79. "'Contractual agreement' refers to any enforceable contract." *Id.* at 1079.

The question, then, is whether Patch's willingness to accept an agreement to pay the jury's award, which ACE recommended, was a "contractual agreement."

A contract is an "agreement to do or not do a certain thing." Mont. Code Ann. § 28–2–101; *see generally Kluver*, ___ P.3d ___, 2012 WL 6740152 at *7. "Sufficient cause or consideration" is an essential element of a contract. *Id.* at 28–2–102. Sufficient consideration is defined as:

> Any benefit conferred or agreed to be conferred upon the promisor by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by the person, other than prejudice that the person is at the time of consent lawfully bound to suffer, as an inducement to the promisor is a good consideration for a promise.

Mont. Code Ann. § 28–2–801. The Montana Supreme Court has held that this means that "[c]onsideration requires that the contracting parties, each as to the other, confer some legal benefit and/or incur some detriment as an inducement to

6

performance." *Mont. Pub. Employee's Assn. v. Office of Gov.*, 898 P.2d 675, 454 (Mont. 1995) (citations omitted).

Here, ACE's recommendation to H&B was a recommendation to make a settlement. Had ACE and H&B paid the $850,000 judgment to the Patches, that payment would have been supported by adequate consideration. The Patches would have received payment of the judgment without the risk of that judgment being vacated on appeal. And H&B and ACE would have been relieved of the obligation to pay post-judgment interest, among other benefits provided by the release (e.g., a disclaimer of liability).

Since ACE satisfied the requirements of Paragraph h, it had no "obligation to pay any 'ALAE' incurred in excess of the 'ALAE Self Insured Retention' after the time [it] requested [H&B to] tender the remaining limits." (Endorsement, doc 7-1 at 47).

H&B's reading of the "unreasonably withhold its consent" provision in Paragraph h isn't reasonable. The plain language of that provision means only that H&B can't unreasonably withhold its consent to tender the self-insured retention if ACE requests that tender. It doesn't mean that H&B can force ACE to continue paying ALAE as long as H&B is reasonably withholding consent to a settlement.

## II.    The post-judgment interest clause

ACE also argues that it was excused from paying further post-judgment

interest under the "post-judgment interest clause" in Section I of the Endorsement:

> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Allocated Loss Adjustment Expenses – Coverages A and B below, but we shall have the right and opportunity to assume from the insured the defense and control of any claim or "suit", including any appeal from a judgment seeking payment of damages covered under this policy that we believe are likely to exceed the "Self Insured Retention." In such event, we and the insured shall cooperate fully. We shall pay interest only on that amount of any judgment we pay that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court that part of the judgment that is within the applicable limit of insurance shown in the Declarations. But the amount we will pay for damages and Allocated Loss Adjustment Expenses that are in excess of the "Self Insured Retention" is limited as described in Section III – Limits of Insurance.

(*See* Policy, doc. 7-1 at 46.)

ACE insists that it had no obligation to pay any post-judgment interest after

November 17, 2009, because it "offered to pay . . . that part of the judgment that is

within the applicable limits of insurance . . . ." (*See id.*)

H&B, on the other hand, maintains that this clause doesn't apply. H&B first

hones in on the "In such event . . ." phrase in the preceding sentence. H&B argues

that, in light of that phrase, this entire section only applies when ACE assumes the

defense of the case (hence H&B's reference to this section as the "Defense

8

Assumption Clause").

Again, ACE's position is more persuasive. This clause is a catch-all clause at the end of Section I of the Endorsement. It isn't, for example, labeled as a specific clause that applies only when ACE assumes the defense.

The first two sentences say a few things: (1) H&B's coverage is limited to the coverage set out in "ALLOCATED LOSS ADJUSTMENT EXPENSES—COVERAGES A AND B," (2) ACE can assume the defense of the case, and (3) if ACE assumes the defense, it will cooperate with H&B. The last two sentences then place limits on how much post-judgment interest ACE will pay in certain circumstances and how much Allocated Loss Adjustment Expenses ACE will pay that are in excess of the self insured retention. Nothing in this section says that the last two sentences apply only when ACE assumes defense of the case.

Consider, for example, the first half of the first sentence: "No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under ALLOCATED LOSS ADJUSTMENT EXPENSES—COVERAGES A AND B below . . . ." Nothing implies that this broad qualifier applies only when ACE assumes the defense of the case. Logic dictates that it wouldn't. The defense assumption language follows this clause of the sentence and doesn't qualify it. There are at least some portions of this section

9

that apply even if ACE hasn't assumed the defense. Moreover, the last sentence appears to apply regardless of whether ACE has assumed the defense. So, too, does the sentence dealing with post-judgment interest. Nothing in the plain language of the section states that the Post-Judgment Interest Clause applies only when ACE has assumed the defense.

ACE satisfied the requirements of this clause because it "paid, offered to pay, or deposited in court that part of the judgment that is within the applicable limit of insurance . . . ." (*See* Endorsement, doc. 7-1 at 42.)

ACE offered to pay only $600,000, so H&B reasons that ACE didn't offer to pay all of the judgment, as required to trigger this clause.

H&B misinterprets the Endorsement. ACE didn't have to pay the entire $850,000 judgment, including H&B's $250,000 self-insured retention, because the "applicable limit of insurance" is the amount of money that ACE will pay in excess of the self-insured retention. Section III.2 of the Endorsement reads: "The LIMITS OF INSURANCE as shown in the Declarations shall apply in excess of the 'Self Insured Retention' shown in the Declarations. You agree to assume payment of the 'Self Insured Retention.'" (Endorsement, doc. 7-1 at 44.)

Here, the "part of the judgment that is within the applicable limits of insurance" is $600,000—i.e., $850,000 minus the $250,000 self-insured retention.

10

ACE offered to pay that amount, and when it did so it was relieved from paying

further post-judgment interest after it made that offer.[1]

## III.    Remaining claims and pending motions

Aside from H&B's breach of contract claim and declaratory judgment

claim, the only remaining claim is H&B's claim under the Unfair Trade Practices

Act, Montana Code Annotated §§ 33–18–201 to 33–18–245.

In the earlier summary judgment order (doc. 75), the Court ordered the

parties to show cause why H&B's remaining claim shouldn't be dismissed without

prejudice, in light of the summary judgment. The parties were also directed to

show cause why H&B's motion to strike, as well as ACE's oral motion to extend

the motions deadlines, shouldn't be dismissed as moot.

ACE states that H&B's Unfair Trade Practices Act claim should be

dismissed with prejudice and that the pending motions should be dismissed as

moot.

H&B maintains that, rather than dismissing the claim and motions, the

Court should sever the claim under Rule 54(b) and stay the case while H&B

decides whether to appeal.

---

[1] Contrary to H&B's suggestion, the Endorsement doesn't require ACE to have extended that offer to the Patches. The provision only requires ACE to have made an offer to pay the applicable portion of the judgment, which it did.

In the order to show cause, there is discussion of the option of dismissing

the Unfair Trade Practices Act claim without prejudice, but dismissal with

prejudice is also an option.

There is no reason why the Unfair Trade Practices Act claim shouldn't be

dismissed with prejudice and all pending motions dismissed as moot.[2] Since ACE

didn't breach the contractual provisions at issue, ACE can't be liable under the

Unfair Trade Practices Act. *See* Mont. Code Ann. § 33-18–242(5) ("An insurer

may not be held liable under this section if the insurer had a reasonable basis in

law or in fact for contesting the claim or the amount of the claim, whichever is in

issue.").

If H&B appeals and prevails, then the Unfair Trade Practices Act claim and

motion to strike will, like the phoenix, be resurrected. H&B will not lose an

opportunity to vindicate those claims if it succeeds on appeal. Consequently the

remaining claims are dismissed with prejudice and the pending motions are

dismissed as moot.

---

[2] In its response to the order to show cause, H&B wrote: "Moreover, a dismissal with prejudice of H&B's UTPA claim—even if it did make this Court's decision on the contract claims an appealable judgment—would create a statute of limitations problem." (Doc. 77 at 3.) The Court assumes that H&B intended to say "without prejudice" rather than "with prejudice."

## CONCLUSION

ACE is entitled to summary judgment because (1) ACE satisfied the requirements of Section IV.II.h of the Endorsement by recommending a settlement to H&B that would have been acceptable to the Patches and (2) ACE satisfied the post-judgment interest provision in Section I of the Endorsement because it offered to pay the part of the judgment that was within the policy limits. Having met these requirements, ACE was relieved of paying for further Allocated Loss Adjustment Expenses, including post-judgment interest and attorney's fees.

IT IS ORDERED that the claims not previously adjudicated in the Court's March 7, 2013 summary judgment order (doc. 75) are DISMISSED WITH PREJUDICE. All pending motions are DISMISSED AS MOOT.

IT IS FURTHER ORDERED that the Clerk of Court is directed to enter judgment in favor of ACE American Insurance Company and against Hillerich & Bradsby Company and close this case.

Dated this 26th day of March 2013.

Donald W. Molloy, District Judge
United States District Court

13